UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
HENRY THOMAS, JR.,                  )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 03-2483 (RBW)
                                    )
DEPARTMENT OF DEFENSE, et al.,      )
                                    )
            Defendant.              )
                                    )
_____)

**MEMORANDUM OPINION**

Plaintiff Henry Thomas brings this action against the United States Department of Defense ("DOD"), the Defense Contract Management Agency ("DCMA"), the Defense Logistics Agency ("DLA"),[1] and several individuals in their personal and official capacities (collectively "the defendants"),[2] alleging various violations of 42 U.S.C. §§ 1981, 1983, and 1985 (2000) and the Fifth, Thirteenth, and Fourteenth Amendments, as well as common law fraud and conspiracy. See generally Complaint ("Compl."). The claims are based broadly on the plaintiff's participation in, and termination from, the federal Meals Ready to Eat ("MRE") Industrial

---

[1] According to the plaintiff, the DCMA is formerly known as the DLA. Complaint ("Compl.") ¶ 7. The defendants state that the DCMA—which they call the Defense Contract Management Area Office—was part of the DLA until March 2000, at which point the two entities became independent. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 2. In any event, the plaintiff names both the DCMA and the DLA as defendants in the caption of his complaint. Id. at 1.

[2] The individual defendants are: (1) Wade Harmon, a resident of Pennsylvania and employee of the DOD and the DCMA, Compl. ¶ 7; (2) Marvin Liebman, a resident of New York and employee of the DOD and the DCMA, id. ¶ 8; (3) Frank Bankoff, a resident of Pennsylvania and employee of the DOD and the DLA, id. ¶ 9; and (4) "other unnamed employees, officers, attorneys, and agents" of the DOD, id. ¶¶ 7-9, including "Tom, Wayne, and Kathleen Doe," id. at 1.

Preparedness Program ("IPP" or "the Program") in the 1980s.³  Id.  Specifically, the plaintiff alleges, inter alia, (1) that he was wrongfully refused a procurement contract in the early 1980s as a result of the DOD's desire "to keep the MRE program free of blacks," id. ¶ 17(a); (2) that, following a 1984 settlement agreement in which the plaintiff was awarded an MRE contract, "the [d]efendants allowed the use of hostile and discriminatory practices to force [him] from the MRE IPP program," id. ¶ 17(f); (3) that he was wrongfully terminated from the MRE program in June 1987, id. ¶¶ (o)-(q); and (4) that the defendants in 2002 wrongfully refused to reinstate him into the MRE program, id. ¶ (w).  The plaintiff seeks $150 million in compensatory damages, $5 billion in punitive damages, and an array of equitable and injunctive relief.  Id. at 22.

Currently before the Court is the defendants' motion to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), and 12(b)(6) ("Defs.' Mot.").  For the reasons stated below, the Court concludes that it cannot exercise personal jurisdiction over the individual defendants and that venue in this case is improper in the District of Columbia.  Accordingly, the Court denies the defendants' motion to dismiss and transfers the plaintiff's claims to the United States District Court for the Southern District of New York.

---

³ To the extent that the plaintiff alleges constitutional violations against federal officers in their individual capacities, the Court construes the complaint—filed pro se—as asserting claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The defendants do not dispute that the plaintiff has pled Bivens claims against the individual defendants.  See Defs.' Mem. at 27-36.

## I. Background

The plaintiff is a New York state resident and the sole owner of Freedom NY, Inc., a business incorporated in New York. Compl. ¶ 6. The named individual defendants are residents of New York or Pennsylvania. Id. ¶¶ 7-9; Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 2-3. Neither the DCMA nor the DLA are located in Washington, D.C. Compl. at 1; Defs.' Mem. at 2, 14 n. 3. The DOD is located in the Pentagon in Arlington, Virginia.[4] Defs.' Mem. at 14 n.3; see also Monk v. Sec'y of the Navy, 793 F.2d 364, 369 n.1 (D.C. Cir. 1986). Finally, it is undisputed "that the present cause of action arose in New York." Plaintiff's Opposition to Defendant[s'] Motion to Dismiss ("Pl.'s Opp.") at 30.

The plaintiff alleges the following facts in support of his complaint. In November 1980, Freedom NY filed a proposal with the DLA to participate in a procurement program to supply MREs, or combat rations, to the DOD. Compl. ¶ 11. At the time the plaintiff made this proposal, "competition was open and contracts were awarded simply to the lowest bidder." Id. ¶ 17(a). Shortly after the plaintiff's application was submitted, however, the MRE program was withdrawn from open competition "and placed under the [IPP], a special set aside exception program . . . where negotiations and awards are restricted to a selected handful of contractors that met very specific requirements that [the plaintiff] could not then meet." Id. The plaintiff further alleges that even "after borrowing and investing millions of dollars to meet all the requirements" of the IPP, Freedom NY was not awarded an MRE contract. Id. ¶ 17(c).

---

[4] The caption of the plaintiff's complaint incorrectly states that the Department of Defense is located in Washington, D.C. Compl. at 1.

In September 1983, the plaintiff brought an action in the United States District Court for the District of Columbia challenging the DLA's refusal to award Freedom NY a procurement contract. Id. ¶ 17(d). The DOD purportedly intervened and settled this lawsuit, issuing a written determination in February 1984 instructing the DLA to allow the plaintiff to participate in the IPP. Id. In compliance with the DOD's instruction, the DLA then awarded Freedom NY an MRE contract. Id. ¶ 17(d)-(e).

The contractual relationship between the plaintiff and the government did not run smoothly, however. The plaintiff alleges that the defendants engaged in, or condoned, a number of "hostile and discriminatory practices . . . designed to force [him] to give up, quit, fail and get out of the MRE program." Id. ¶ 17(f), (g). The plaintiff further alleges that, despite his own good faith performance in the IPP, the defendants "moved to replace him in the program with a less qualified white contractor ("CINPAC") [who] had no experience in food processing [and who] did not have the necessary facilities or equipment." Id. ¶ 17(h). "In order to block this [allegedly] illegal replacement," in February 1986 the plaintiff filed a second lawsuit in the United States District Court for the Southern District of New York, seeking immediate injunctive relief and a declaration "that CINPAC did not meet the Walsh-Healey contract prerequisite and threshold requirements" to be awarded an MRE contract. Id. ¶ 17(j), (l); see also Complaint for Injunctive and Declaratory Relief, Freedom NY, Inc. v. United States, Civ. No. 86-1363 (CBM) (S.D.N.Y. February 14, 1986). The New York District Court dismissed the plaintiff's lawsuit on May 27, 1986, see Pl.'s Opp., Ex. 1 (February 24, 2006 Amended Memorandum in Support of Plaintiff's Motion to Correct or, in the Alternative, to Vacate Judgment Pursuant to Rule 60(b)(6), Freedom NY, Inc. v. United States, Civ. No. 86-1363 (CBM)) at 4, and in June 1987

the defendants terminated Freedom NY's MRE contract, claiming that the plaintiff had breached the contract and was therefore in default, Compl. ¶¶ 17(p)-(q), Pl.'s Opp. at 10.

The plaintiff appealed the termination of his MRE contract to the Armed Services Board of Contract Appeals ("ASBCA"), alleging that the defendants had wrongly classified his removal as a default termination and had "targeted [him] for economic destruction." Compl. ¶ 17(r). In 1991, the plaintiff brought a second action before the ASBCA, appealing the denial of his claim for $21 million in damages for various alleged contractual breaches on the part of the defendants. Id. ¶ 17(s). In May 1996, the ASBCA granted the plaintiff's first appeal and converted the default termination to a termination at the convenience of the government. Id. ¶ 17(t); Freedom NY, Inc., ASBCA No. 35671, 96-2 BCA ¶ 28,328 (May 7, 1996), partially vacated on other grounds, 96-2 BCA ¶ 28,502 (Aug. 15, 1996). In August 2001, the ASBCA held that the defendants had breached the plaintiff's MRE contract in multiple respects. Complaint ¶ 17(v); Freedom NY, Inc., ASBCA No. 43965, 01-2 BCA ¶ 31,585 (Aug. 28, 2001), reconsideration denied, 02-1 BCA ¶ 31,676 (Dec. 7, 2001).[5] The ASBCA also held that the defendants had no contractual duty, whether express or implied, "to maintain [Freedom NY] as an IPP planned producer" or to award future MRE contracts to the plaintiff. ASBCA No. 43965, 01-2 BCA ¶ 31,585 at 38.

In 2002, the plaintiff requested reinstatement into the MRE procurement program. Compl. ¶ 17(w). The DLA denied his reinstatement request, allegedly "using the same old

---

[5] The United States Court of Appeals for the Federal Circuit partially reversed and remanded the case on other grounds. Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, reh'g denied, 346 F.3d 1359 (Fed. Cir. 2003), cert. denied, 541 U.S. 987 (2004). Upon remand, the ASBCA modified the damage award it had made to the plaintiff. In re Freedom NY, Inc., ASBCA No. 43965, 04-2 BCA ¶ 32,775 (Oct. 14, 2004), reconsideration denied, 05-1 BCA ¶ 32,934 (Apr. 11, 2005), aff'd, No. 05-1500, 2006 WL 1327820 (Fed. Cir. May 5, 2006).

charges already dismissed and declared 'meritless' by the [ASBCA]." Id.  The pro se plaintiff then brought this action on December 1, 2003, alleging that the "[d]efendants have prevented and refused to allow [him] to participate as an equal participant in the [MRE] program" from 1980 through 2003, id. ¶ 12, and charging them with "continuing discriminatory conduct," which is "intentional, willful, [and] motivated by an animus towards blacks," id. ¶¶ 20, 22.[6]

The defendants moved to dismiss the complaint on February 10, 2005, arguing in part that (1) the Court lacks personal jurisdiction over the individual defendants, Defs.' Mem. at 11-14; and (2) venue is improper in the District of Columbia, id. at 14-16.[7]  The plaintiff then retained counsel and, on November 2, 2005, moved to voluntarily dismiss all claims in this action without prejudice.  Motion to Dismiss Without Prejudice Plaintiff's Complaint and Jury Demand On All Counts [Voluntarily] at 1-2.  The defendants opposed the plaintiff's motion, arguing that the plaintiff was "attempting to avoid an adverse decision on the merits." Defendants' Opposition to Plaintiff's Motion to Voluntarily Dismiss the Complaint Without

---

[6] The plaintiff also claims in his complaint that the defendants failed to make an agreed-upon settlement payment in June 2003.  Compl. ¶ 17(x).  The defendants contend that this payment was ultimately made in March 2004 pursuant to a parallel action that had been initiated by the plaintiff, Thomas v. Harmon, Civ. No. 03-2609 (RBW), which the plaintiff voluntarily moved to dismiss as moot.  Defs.' Mem. at 19; see also Motion to Dismiss Civil Action No. 03-2609 RBW, Civ. No. 03-2609 (March 29, 2004).  The plaintiff does not dispute that this claim is now moot.  Accordingly, it is dismissed with prejudice.

[7] The defendants further argue, inter alia, that the plaintiff's claims are time-barred by the applicable statutes of limitations to the extent that they occurred before December 1, 2000.  Defs.' Mem. at 18-20.  In his opposition, the plaintiff argues that the limitations period did not begin to run on his various claims until the conclusion of "mandatory administrative proceedings" before the ASBCA in 2001.  Id. at 27.  The plaintiff also contends that his complaint alleges "specific discriminatory actions" after December 1, 2000, that are not time-barred by any limitations period.  Id. at 29.  Because the Court concludes that it has no jurisdiction to entertain the plaintiff's claims, it cannot decide whether the plaintiff's pre-2000 claims were tolled by mandatory administrative proceedings.  However, the Court notes that the defendants are flatly wrong to assert that "[t]he only action complained of [by the plaintiff] which occurred after [December 1, 2000] is the [now-moot] Government's alleged failure to make timely payment" under the ASBCA settlement agreement.  Defs.' Reply at 8.  At the very least, it is plain that the plaintiff has articulated claims relating to the 2002 refusal to award him an MRE contract, which he contends was the product of racial discrimination.  Compl. ¶ 17(w).

Prejudice at 1.  After a status hearing, the Court denied the plaintiff's motion and directed the plaintiff to respond to the defendants' motion to dismiss.  January 23, 2006 Order.

On February 27, 2006, the plaintiff filed an opposition to the defendants' motion.  Pl.'s Opp.  Notably, the plaintiff does not contest the defendants' assertions regarding personal jurisdiction and venue.  Id. at 30.  Rather, the plaintiff states that the individual defendants "are subject to personal jurisdiction in the Southern District of New York and venue would be proper in that [C]ourt."[8]  Id.

## II.  Standards of Review

**A. Rule 12(b)(2)**

Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that the Court may exercise personal jurisdiction over the defendants.  Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005); see also Crane v. New York Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); Rong v. Liaoning Provincial Gov't, 362 F. Supp. 2d 83, 90 (D.D.C. 2005) (Walton, J.), aff'd, ___ F.3d ____, No. 05-7030 (July 7, 2006) (citing Jacobsen v. Oliver, 201 F. Supp. 2d 93, 104 (D.D.C. 2002)).  This burden, however, is "only a minimal one," Jacobsen, 201 F. Supp. 2d at 104 (internal brackets and citation omitted), and the plaintiff "need only make a prima facie showing of personal jurisdiction in order to defeat [the] defendant's motion," Rong, 362 F. Supp. 2d at 90 (internal quotation marks and citation omitted), see also Mwani, 417 F.3d at 7.  Moreover, "[a]ll factual disputes concerning jurisdiction must be resolved

---

[8] On February 27, 2006, the plaintiff also filed a motion to correct or vacate a nineteen-year-old judgment "relating to the denial of future MRE contracts."  Pl.'s Opp. at 30; see id., Ex. 1.  Thus, the plaintiff further states that "[t]he Southern District of New York is . . . an appropriate forum because related litigation is currently pending there."  Id.

in favor of [the] plaintiff[]," Rong, 362 F. Supp. 2d at 90, and the plaintiff's factual assertions "are presumed to be true unless directly contradicted by affidavit . . . or other evidence," id. (internal quotation marks and citation omitted). The plaintiff, however, must allege "specific facts connecting the defendant with the forum" and may not rely on "[b]are allegations and conclusory statements." Capital Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (citation omitted).

**B. Rule 12(b)(3)**

On a motion to dismiss for lack of proper venue under Rule 12(b)(3), "the Court accepts the plaintiff['s] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff['s] favor, and resolves any factual conflicts in the plaintiff['s] favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (internal quotation marks, ellipses, and citation omitted); see also 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001) (stating that the Court will grant a Rule 12(b)(3) motion if "facts [are] presented that . . . defeat [the] plaintiff's assertion of venue") (citations omitted). However, "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) (citations omitted). Finally, "[a] court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue [or] personal jurisdiction." Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). "Courts in this [C]ircuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

### III. Analysis

As a threshold matter, the defendants argue that the Court lacks personal jurisdiction over the individual defendants and that venue in this case is improper in the District of Columbia. Defs.' Mem. at 11-16. As noted, "it is the plaintiff's obligation to institute [this] action in a permissible forum," Freeman, 254 F. Supp. 2d at 56, and he therefore bears the burden of demonstrating that he has done so. In this case, however, the plaintiff essentially concedes the defendants' arguments, making no showing whatsoever that this case has been properly brought in the District of Columbia. Pl.'s Opp. at 30. Accordingly, with no need for extensive analysis, the Court easily concludes that it lacks jurisdiction to entertain the plaintiff's claims. For the following reasons, the Court transfers this matter to the Southern District of New York.

### A. Personal Jurisdiction

The plaintiff has entirely "failed to allege the requisite contacts between [the individual defendants] and the District of Columbia under the Constitution and the District's long-arm statute." Gardner v. United States, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000). Specifically, the plaintiff does not contend that his claims for relief arose from the defendants having any tangible connection with the District of Columbia, nor does he allege that the defendants' tortious acts elsewhere led to an injury in this forum. See D.C. Code § 13-423(a) (2005); Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985) (holding that courts may exercise jurisdiction over an out-of-state defendant who "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities") (internal quotation marks and citation omitted). The plaintiff agrees "that the present cause of action arose

in New York," Pl.'s Opp. at 30, and it is undisputed that none of the defendants reside or maintain their principal places of business in the District of Columbia, see Compl. ¶¶ 7-9.[9] In short, the plaintiff offers nothing to show that the individual defendants "should reasonably [have] anticipate[d] being haled into court" here, GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)), and maintenance of a suit against them in this forum would surely "offend traditional notions of fair play and substantial justice," Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). The Court therefore concludes that it cannot exercise personal jurisdiction over the individual defendants.

**B. Venue**

It is also clear that the District of Columbia is an improper venue for the litigation of this case. The defendants argue that venue is improper in the District of Columbia because the "[p]laintiff's cause of action . . . arose in New York [or] Pennsylvania, not in the District of Columbia." Defs' Mem. at 15. The plaintiff offers no response to this argument. Instead, he requests that the case be transferred to the Southern District of New York, where he argues that venue would be proper. Pl's Opp. at 30. For the reasons stated below, the Court concludes that the District of Columbia is not a proper venue for this action. It therefore transfers this matter to the Southern District of New York.

The general venue provision for civil actions against federal officials "acting in [their] official capacity" states that actions may

---

[9] Nor, of course, is the plaintiff himself a District of Columbia resident. Compl. ¶ 6.

> be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e) (2000). The District of Columbia is not an appropriate venue for this action under any of these criteria. First, it is undisputed that none of the defendants reside in the District of Columbia. Compl. at 1, ¶¶ 7-9; Def's Reply at 5. Furthermore, no part of the cause of action is alleged to have occurred in the District of Columbia. Indeed, the plaintiff acknowledges "that the present cause of action arose in New York." Pl's Opp. at 30. Finally, it is also undisputed that the plaintiff himself is a resident of New York. Compl. at ¶ 6. The Court, therefore, cannot find that venue is proper in the District of Columbia under Section 1391(e).

Non-diversity civil actions against federal officials in their personal capacity are governed by the general venue provision of 28 U.S.C. § 1391(b), which provides that such actions may

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. §1391(b) (2000). The District of Columbia is also not an appropriate venue under any of these criteria. For the reasons stated above, venue is not proper under Sections 1391(b)(1) or 1391(b)(2). None of the defendants reside in this judicial district, nor does the plaintiff allege that <u>any</u>, let alone a substantial part, of the events or omissions giving rise to his claims occurred in the District of Columbia. Furthermore, the Court need not consider Section 1391(b)(3) for two reasons. First, as already discussed, the plaintiff has adduced no evidence demonstrating that any of the defendants may be found in the District of Columbia. <u>See</u> Pl.'s Opp. at 30. Second,

and more importantly, it is clear that this action could have been filed in New York. The plaintiff and at least one of the defendants reside in New York, Compl. ¶¶ 6, 8, and it is undisputed that the "[p]laintiff's cause of action . . . arose in New York [or] Pennsylvania," Defs.' Mem. at 15, see also Pl.'s Opp. at 30. Moreover, much of the litigation relating to the plaintiff's contractual relationship with the defendants has occurred in the Southern District of New York, and the plaintiff concedes that "venue would be proper in that [C]ourt." Id.

Having concluded that venue is improper in the District of Columbia, the Court must either dismiss this action or, "if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2000). The decision whether to dismiss or transfer is committed to the sound discretion of the Court. See Davis v. Am. Soc'y of Civil Eng'rs, 290 F. Supp. 2d 116, 120 (D.D.C. 2003) (citation omitted). However, "[t]he interest of justice . . . generally requires transferring such cases to the appropriate judicial district rather than dismissing them."[10] Id. (citations omitted). In this case,

---

[10] Relying on Simpkins v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) and Cameron, 983 F.2d 253, the defendants suggest that it would be in the interest of justice for the Court to dismiss the plaintiff's claims with prejudice rather than transfer this case to another jurisdiction. Defs.' Mem. at 15 & n.4. Noting "the duty of the lower federal courts to stop insubstantial Bivens actions in their tracks and get rid of them," 108 F.3d at 370 (citations omitted), the Court in Simpkins held that Bivens actions which "could not possibly win relief" could be dismissed for failure to state a claim even if a procedural defect—in that case, failure to properly effect service of process on the individual defendants—would normally result in dismissal without prejudice, id. (quoting Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (internal quotation marks omitted). See also id. (stating that "[d]ismissing a meritless Bivens suit for insufficiency of service of process, like dismissing such a suit for improper venue, . . . merely postpones the inevitable"); Cameron, 983 F.2d at 257 n.5 (dismissing Bivens action with prejudice, even though venue was improper in the District of Columbia, where the Court was "convinced" that the plaintiff had not stated a valid claim). In both Simpkins and Cameron, the plaintiff's complaint failed to allege any specific involvement in the purportedly unlawful conduct by the individual defendants. Simpkins, 108 F.3d at 369; Cameron, 983 F.2d at 258. Accordingly, the Bivens actions in those cases were obviously and fatally defective on their face. See Simpkins, 108 F.3d at 369 (stating that a valid Bivens claim "must at least allege that the defendant federal official was personally involved in the illegal conduct") (citation omitted). Here, by contrast, the plaintiff plainly alleges the individual defendants' specific involvement in the complained-of actions. See, e.g., Compl. ¶¶ 7-9. Furthermore, except to the extent, as noted supra, that the statute of limitations may bar certain of the plaintiff's Bivens claims, it is not sufficiently clear that he cannot "possibly win relief" to warrant wholesale dismissal of his Bivens action under Simpkins and Cameron. Baker, 916 F.2d at 726 (citation omitted).

it appears that statute of limitations roadblocks may prevent the plaintiff from refiling his claims in the Southern District of New York if the Court chose to dismiss the action. See Defs.' Mem. at 18-20 (arguing that the plaintiff's claims are time-barred). Accordingly, the Court finds that it is in the interest of justice to transfer the matter to the Southern District of New York and to allow the parties to litigate all of the plaintiff's remaining claims in that forum.

     **SO ORDERED** this 7th day of July, 2006.[11]

REGGIE B. WALTON<br>United States District Judge

---

[11] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.